# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Delores Ford, 740 Oglethorpe St, NE, Washington Dc 20011 | \* |
| | \* |
| Alice M. Freeman, 5848 Eastern Ave, NE Washington, Dc 20011 | \* |
| | \* |
| Henry Kahangara, 5710 Eastern Ave, NE Washington DC 20011 | \* |
| | \* |
| Bettye A. Tate, 5832 Eastern Ave, NE Washington DC 20011 | \* |
| | \* |
| Deborah and Darrell Johnson, 5728 Eastern Ave, NE Washington, Dc 20011 | \* |
| Plaintiffs, et al | \* |
| v. | \* Civil Action No |
| SunTrust Mortgage Inc, 901 Semmes Avenue, Richmond VA. 23224 | \* |
| Bank of America, N.A., 1825 E. Buckeye Road, Phoenix AZ. 85034 | \* |
| Network Funding, L.P., 9700 Richmond Avenue, Houston, TX. 77042 | \* |
| Defendants, et al | |

This suit is being brought by Plaintiffs Delores Ford, Alice Freeman, Henry Kahangara, Bettye Tate, and Deborah and Darrell Johnson through their attorneys Charles Tucker Jr. and the Tucker Law Group LLP, seeking equitable and compensable damages against the Defendants.

**INTRODUCTION**

1.      This is a direct fraud action by Plaintiffs to recover treble damages and civil penalty claims under the Fraud and False Statements 18 U.S. Code 47, 1028, False Claims Act (FCA) 31 U.S.C. 3729-3730 against Defendants Bank of America, National Association ("BOA-Bank"), SunTrust Mortgage, Inc. (SunTrust), and Network Funding, L.P. (Network Funding) (collectively, "Defendants") pursuant to the Authority to act as notary 10 U.S. Code 1044 and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") 12 U.S.C. 1833a.

2.      This action arises out of Defendants' fraud against purchasers of residential mortgage-backed securities ("RMBS") that Defendants structured, offered, and sold. In short, Defendants knowingly and willfully misled investors about the quality and safety of their investments in certain RMBS by making materially false and misleading statements and by omitting to disclose, among other things, important facts about the mortgages collateralizing the RMBS and Defendants' failure to conduct adequate due diligence, in offering documents filed with the United States Securities and Exchange Commission ("SEC").

3.      In order to state a cause of action for fraud or fraud in the inducement, the complaining party must allege (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff.

4.      Because of the serious nature of the allegations that are required and because many times the allegations of fraud are based upon oral representations

the Federal Rules of Civil Procedure set forth specific requirements that must be alleged relating to allegations of fraud.

5.      Rule 9(b) of the Federal Rules of Civil Procedure require that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Courts have generally construed this to mean that Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation as to why they were fraudulent.

## JURISDICTION AND VENUE

6.      Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1345 (United States as a plaintiff), and 12 U.S.C. § 1833a (civil penalty action).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1395(a) because all Defendants reside in this district and a substantial part of the events and omissions giving rise to the claims of the United States occurred in this district. Further, all defendants are subject to personal jurisdiction in this district.

## PARTIES

8.      Plaintiff Delores Ford, May 16, 2005 Deed of Trust was notarized by Robert W. Hood for the State of Maryland,  Mr. Hood was not commissioned to perform as notary on that date.  Plaintiff Alice M. Freeman, September 27, 2007 Deed of Trust was notarized by Sandra A. Stukel for the Commonwealth of Virginia,

Ms. Stukel was not commissioned to perform as notary on that date. Plaintiff Henry Kahangara July 21, 2006 Deed of Trust was notarized by Deborah L. Daniel for Prince George County, Ms. Daniel was not commissioned to perform notary duties on that day. Plaintiff Bettye A. Tate, April 25, 2008 Deed of Trust was notarized by Fredricia K. Cunegin for Prince George County, Ms. Cunegin was not commissioned to perform notary duties on that date. Plaintiffs Deborah and Darrel Johnson, December 5, 1989 Deed of Trust was notarized by Ms. Maija F. Eksteins. Ms. Eksteins was not commissioned to perform notary duties on that date. All Plaintiffs are residents of Washington, D.C.

9. Defendant Bank of America, National Association is a corporation organized under the laws of Delaware headquartered in Charlotte, North Carolina. At all times relevant to the allegations herein, BOA-Bank was a federally insured financial institution and a wholly- owned subsidiary of BOA-Corp.

10. Defendant SunTrust Bank Inc., is a bank holding company organized under the laws of Georgia. The largest subsidiary is SunTrust Bank is headquartered in Atlanta, GA, which has 1400 branches across eleven southeastern states and Washington, DC. SunTrust Mortgage products and services are provided by SunTrust Mortgage, Inc., which is based in Richmond, Virginia. SunTrust Mortgage, Inc. operates as a subsidiary of SunTrust Bank.

11. Defendant Network Funding, LP is a retail and residential mortgage lender headquartered in Houston, Texas and is licensed in 34 states and Washington, DC.

**CIVIL STATUTES TO COMBAT MORTGAGE FRAUD**

12. The False Claims Act provides liability for any person (i) who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (ii) who "knowingly makes, uses or causes to be made or used, a false record of statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). The FCA further provides that any person who violates the Act is "is liable to the United States Government for a civil penalty of not less than ($5,500) and not more than ($11,000)…plus 3 times the amount of damages which the Government sustains because of the act of that person." 31U.S.C. § 3729(a).

13. The FCA allows private persons to file suit for violations of the FCA on behalf of the government. A suit filed by an individual on behalf of the government is known as a "qui tam" action, and the person bringing the action is referred to as a "relator." 31 U.S.C. § 3730.

14. Congress enacted FIRREA in 1989 to reform the federal banking system. Toward that end, FIRREA authorizes civil enforcement of enumerated criminal predicate offenses as established by a preponderance of the evidence that affect financial institutions and certain government agencies. See 12 U.S.C. § 1833a(e). Several of the predicate offenses that can form the basis of liability under FIRREA are relevant here. First, 18 U.S.C. § 1006 prohibits any person who is "connected in any capacity with (a government agency)" from "making any false entry in any book, report, or statement of or to (a government agency) " with the "intent to defraud…or any other body politic…or to deceive any officer, auditor, examiner, or agent of department or agency of the United States." Second, 18 U.S.C. § 1014

prohibits any person from "knowingly making any false statement or report, or willingly overvaluing any land, property, or security, for the purpose of influencing any action of (FHA)." Id. Third, 18 U.S.C. §§ 1341, 1343 prohibit using the mails or wires, respectively, for the purpose of executing a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

15. FIRREA permits the United States to commence civil actions to recover penalties from, among others, persons who violate specified provisions of Title 18 of the United States Code, including 18 U.S.C. § 1001 (false statement to government) and 18 U.S.C. § 1014 (false statement to financial institution). In such actions, the civil penalties assessed may equal $1.1 million per violation, or, for a continuing violation, up to $1.1 million per day or $5.5 million, whichever is less. 12 U.S.C. § 1833(a)(b)(1)-(2); see also 28 C.F.R. § 85.3. The statute further provides that the penalty can exceed these limits to permit the recovery of the amount of pecuniary gain received from or the amount of pecuniary loss caused by the violations. 12 U.S.C. §1833a(b)(3).

16. Defendants violated 18 U.S.C. §§ 1001 and 1014 by making false statements to and omitting material information from federally insured financial institutions and others, in documents filed with the SEC and elsewhere. In furtherance of their fraudulent conduct, Defendants participated, shared, and/or received money and profits from federally insured financial institutions and others.

# FACTS

## I.   BACKGROUND

### A. Federal Definition of a Security

17.     The Securities Act of 1933 is a federal piece of legislation enacted as a result of the market crash of 1929. The legislation had two main goals: (1) to ensure more transparency in financial statements so investors can make informed decisions about investments, and (2) to establish laws against misrepresentation and fraudulent activities in the securities markets. Prior to this legislation, state laws primarily governed the sale of securities; however, the market crash of 1929 raised some serious questions about the effectiveness of how the markets were being governed. Because of the turmoil surrounding the investing community at this time, the federal government had to bring back stability and investor confidence in the overall system.

18.     The Securities Act of 1933 defines a security as:

"[t]he term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call,

straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

### B. Mortgage Insurance Programs

19. The Federal Housing Administration (FHA) was created by Congress in 1934 to insure that mortgage loans meet certain predetermined lending guidelines, and provided for mortgage insurance programs. FHA insured loans were developed in a way to insure payment to a lender in the event a borrower defaulted on a home mortgage.

20. The Federal National Mortgage Association (FNMA) was created in 1938 as a government sponsored enterprise (GSE) to expand the flow of mortgage money by creating a secondary mortgage market. It operates under a congressional charter that directs its efforts into increasing the availability and affordability of homeownership for low, moderate, and middle-income Americans. Fannie Mae purchases and guarantees mortgages that meet its funding criteria; through this process it secures mortgages to form mortgage-backed securities (MBS).

21. The Federal Home Loan Mortgage Corporation (FHLMC or Freddie Mac) is a stockholder-owned, GSE chartered by Congress in 1970 to keep money flowing to mortgage lenders in support of homeownership and rental housing for middle income Americans. The FHLMC purchases, guarantees and securitizes mortgages to form mortgage-backed securities.

### C. Consumer Protection Acts

22.     The Secondary Mortgage Enhancement Act of 1984 (SMMEA) was an act passed to meet growing demand for mortgage credit that could not be wholly met by existing federal agencies. The SMMEA allowed federally-chartered and regulated financial institutions to invest in mortgage-backed securities, and also overrode state investment laws to enable state-chartered and regulated institutions to invest in these securities. The act made a major contribution to the exceptional growth of the residential mortgage market in subsequent decades.

23.     The Dodd–Frank Wall Street Reform and Consumer Protection Act was created in 2010, is an Act to promote the financial stability of the United States by improving accountability and transparency in the financial system, to end "too big to fail", to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes.

24.     When dealing in fraud, a plaintiff must show deceit to recover under the common law. Prosser describes the elements of deceit as a false representation made by the defendant, knowledge or belief by the defendant that the representation is false, an intention to have the plaintiff rely upon the misrepresentation, justifiable reliance by the plaintiff, and damages from such reliance. W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 105 (4th ed. 1971). The Securities Acts do not require intent to deceive in all cases. Aaron v. SEC, 446 U.S. 680, 689-702 (1980). The Acts expressly cover material omissions. Securities Act of 1933, §§ 11, 12, 15, 17.

25. Mortgage fraud has mushroomed into one of the fastest growing white-collar crimes in the country. It is loosely defined as the "material misstatement, misrepresentation, or omission relied upon by an underwriter or lender to fund, purchase, or insure a loan."

### D. Purchase Money Mortgage

26. A mortgage given as part of the buyer's consideration for the purchase of real property, and delivered at the same time that the real property is transferred as a simultaneous part of the transaction. It is commonly a mortgage taken back by a seller from a purchaser in lieu of purchase money. A purchase-money mortgage is usually used to fill a gap between the buyer's down payment and a new first mortgage or a mortgage assumed, as when the buyer pays 10 percent in cash, gets an 80-percent first mortgage from a bank, and then the seller takes back a purchase money second mortgage for the remaining 10 percent.

27. When a seller agrees in a contract of sale to take back a purchase money mortgage for part of the purchase price, the terms and conditions of the mortgage (such as interest rate and duration) must be set forth in detail; otherwise, the contract might not be enforceable due to incompleteness or uncertainty.

28. The subject mortgages were part of purchase transactions under the Securities Act of 1933. The sales of these securities were improper and lacking in disclosures as to the true nature of the transactions and the positions of the parties, including the fact that the Defendants we actually acting as a conduit removing the essential aspect of risk sharing in the normal lender-borrower relationship.

29. Defendants converted these loans into unregistered securities and illegally sold the rights to those unregistered securities without borrowers' permission, which is illegal pursuant to the Securities Act of 1933. Additionally, Defendants retained the automatic right to rescind these mortgage instruments.

30. The examples set forth below are examples of the mortgages that were fraudulently sold during this period.

      i. The 740 Oglethorpe Property in Washington, DC

Network Funding Loan number 340-504221 relates to a property that Network Funding underwrote the mortgage for the Oglethorpe St property. The mortgage closed on February 16, 2005. The cut off fate was June 1, 2005 and placed in trust under Centex Home Equity Loan Trust # 2005-C.

      ii. The 5848 Eastern Property in Washington, DC

SunTrust Mortgage Loan number 206796724 relates to a property that SunTrust Mortgage underwrote the mortgage for the Eastern Ave property. The mortgage closed on September 27, 2007. The cut off date was October 31, 2007 and placed in trust under Citigroup Mortgage Loan Trust # MPTC 2007-10.

      iii. The 5710 Eastern Property in Washington, DC

Bank of America Loan number 6819511764 relates to a property that Bank of America underwrote the mortgage for the Eastern Ave property. The mortgage closed on July 21, 2006. The cut off date was September 1,

2006 and placed in trust under Bank of America Funding Corp Trust # MPTC 2006-5.

    iv.  The 5832 Eastern Property in Washington, DC

SunTrust Mortgage Loan number 2569900828 relates to a property that SunTrust Mortgage underwrote the mortgage for the Eastern Ave property. The mortgage closed on April 25, 2008. The mortgage was placed in a Private Trust.

    v.  The 5728 Eastern Property in Washington, DC

SunTrust Mortgage Loan number 9000566457 relates to a property that SunTrust Mortgage underwrote the mortgage for the Eastern Ave property. The mortgage closed on December 5, 1989. The mortgage was placed in a Private Trust.

## II. DEFENDANTS HAVE ENGAGED IN WIDESPREAD AND SYSTEMIC VIOLATIONS OF REPRESENTATIONS AND WARRANTIES

31.    The governing agreements require that Defendants, or their agents, take physical possession of the mortgage files and that the note and mortgage are endorsed and assigned to Defendants. Under the governing agreements, Defendants were required to review each of the loan files and to certify that the documentation for each loan was accurate and complete.

32.    Defendants failed to ensure proper mortgage loan documentation and thus failed to force the responsible parties to cure, substitute or repurchase inadequately documented loans.

33. Defendants had a duty, under the governing agreements, to review the mortgage files and create an exception report identifying mortgage loans with incomplete mortgage files. Those loans had to be cured, repurchased, or substituted by the responsible parties.

34. Upon information and belief, Defendants accepted incomplete files without requiring the responsible parties to cure document defects or substitute or repurchase loans.

35. Defendants' failure to take possession of the key mortgage loan documents, their failure to properly review the mortgage files for missing documents or irregularities, and their failure to demand correction of irregularities caused damage to Plaintiffs.

36. A reasonably prudent trustee who had fulfilled its obligations would have noticed these failures in mortgage loan documentation. Upon information and belief, Defendants breached their statutory and contractual obligations by failing to identify these obvious defects and require correction by the responsible parties.

37. Moreover, by certifying that it had received documentation that, upon information and belief, it had not received, Defendants breached their obligations to the detriment of Plaintiffs.

38. Putting these mortgages in public and private trusts without authorization or notification to the buyers was breach of the contractual obligations. Defendants are now not the note holders when they securitized the loans into mortgage-backed securities. Defendants violated federal law under the

Uniform Commercial Code (UCC) by not operating in a secured transaction manner and thus should be held liable for their deficiencies.

39. Defendants failed to act prudently or with due care when they failed to properly review the required documentation, prepared inaccurate certifications, failed to notify the responsible parties about missing required documentation, failed to require action to remedy the inadequate documentation, failed to properly supervise and review custodian conduct, and failed to notify certificate holders of the inadequate documentation and failure to repurchase, substitute, or cure.

40. Documents were notarized by notaries whose commissions where either not valid or expired. These notaries are another representation of the pattern of fraudulent activities by Defendants.

## **CLAIMS FOR RELIEF**

### III. COUNT ONE

**FIRREA Civil Penalties for False Statements Within Jurisdiction of United States (18 U.S.C. § 1001)**

41. Defendants knowingly and willfully made and/or caused to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States.

42. Based upon these violations, Defendants and each of them are liable for civil money penalties pursuant to 12 U.S.C. § 1833a.

IV.     COUNT TWO

**FIRREA Civil Penalties for False Statements to Financial Institutions (18 U.S.C. § 1014)**

43.     Defendants knowingly made a false statement or report and/or willfully overvalued a security for the purpose of influencing the action of investors in the Certificates, including FHLB-San Francisco and Wachovia, in connection with the purchase of the Certificates.

44.     Defendants' false statements and reports and/or overvaluation of a security caused investors in the Certificates, including FHLB-San Francisco and Wachovia, losses and/or exposed them to a risk of loss.

45.     Based upon these violations, Defendants and each of them are liable for civil money penalties pursuant to 12 U.S.C. § 1833a.

V.      COUNT THREE

**Breach of Contract**

46.     The agreements and representations made by the parties formed a valid contract between the Plaintiffs and Defendants

47.     Plaintiffs performed all of their obligations under the contract.

48.     Defendant breached the contract.

49.     Plaintiffs have been damaged by Defendants' breach.

50.     Defendants' conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Plaintiff's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.  An award quite title and all appropriate damages and/or equitable relief in favor of Plaintiffs against Defendants for breaches of their statutory duties in an amount to be determined at trial, including any applicable pre- or post-judgment interest thereon;

B.  Awarding Plaintiffs all reasonable costs and expenses incurred in this action, including attorney's fees, expert fees, and any other properly taxable costs and expenses; and

C.  Any other relief that the Court deems just and proper.

Respectfully Submitted,

\_\_\_\_/s/_____

Charles T. Tucker Jr. Esq.                                         Date: December 31, 2016

Tucker Law Group LLP,
16009 Lavender Dream
Lane Brandywine, MD
20613
Email: charles@tuckerlawgroupllp.com
Phone: (301) 706-2242